1243.  AMERICAN JOBBING ASSOCIATION *v.* REGISTER, CARTER & COMPANY.

Where a printed order for certain goods was signed and delivered by an agent of its makers to the agent of the seller of the goods, upon an express understanding and agreement that the order was not to be binding unless approved by a named member of the makers'. firm, and that the seller's agent was not to deliver the order to his principal to be filled, until the order had been approved and confirmed by the named member of the makers' firm, and where this member of the firm refused to approve the order, but the seller's agent, in violation of the express understanding or agreement above mentioned, immediately upon its receipt sent the order to his principal (not a corporation), such delivery was not effective or binding upon the firm whose name had been signed to the order by their clerk, and they had the right to promptly countermand the order and to refuse to receive the goods from the carrier.

Complaint, from city court of Nashville—Judge Peeples.  April 28, 1908.

Argued July 15, 1908.—Decided February 9, 1909.

*W. G. Harrison,* for plaintiff.

*Buie & Knight,* for defendants.

HILL, C. J. · The American Jobbing Association brought suit against Register, Carter & Company, to recover the purchase-price of goods sold and delivered.  The jury found a verdict for the defendants, and a motion for a new trial was made by the plaintiff and was overruled.  The uncontroverted facts show the following case:  Plaintiff in error was a wholesale jobber (not a corporation) of jewelry, located in Chicago, and the defendants were merchants engaged in a general merchandise business at Lois, Georgia.  A traveling salesman representing the plaintiff solicited and obtained an order from the defendants for a certain amount of jewelry, which order was in writing and was signed in the name of the firm by a clerk.  This order was delivered to the salesman of the plaintiff on condition that he would hold the same, and not send it to his house to be filled, until the order should be approved or confirmed by Mr. Carter, a member of the defendant firm.

The salesman could not himself as a representative of the plaintiff make a contract binding upon the plaintiff, but all orders taken by him for goods were subject to the approval of his principal. In the body of the order the words, printed therein, "purchaser agrees not to countermand, either before or after it is accepted by us," were marked out by pencil; and the defendants' clerk who gave the order, in explanation of this fact, testified that he marked them out in pursuance of the understanding between himself and the salesman of the plaintiff that the order was not to be delivered until approved by Mr. Carter, and, unless approved, could be countermanded by the defendants. Immediately upon receiving the order for the goods the salesman, in violation of his agreement to hold the order subject to the approval of Mr. Carter, sent it to his house in Chicago; and the house, on receiving the order, immediately shipped the goods to the defendants. On the return of Mr. Carter, who was absent at the time the order was given, he refused to confirm the order for the goods, and directed the clerk who had made it to so notify the plaintiff. The clerk thereupon wrote to the plaintiff, countermanding the order and stating that Mr. Carter had refused to approve the same. The goods, however, had been shipped, when this letter was received in Chicago, and the plaintiff refused to accept the countermand, but insisted that the goods had been delivered as ordered; and, on the refusal of the defendants to accept the goods, brought the present suit for the purchase-price.

In addition to the general grounds contained in the motion for new trial, there are several special exceptions. Under the view we take of the merits of the controversy, these exceptions become immaterial. We think there can be no question that the verdict was correct, under the undisputed evidence that the order for the goods, while in writing, was delivered to the salesman of the plaintiff with the express understanding that it was not to be delivered or sent to his house until it had been approved or confirmed by Mr. Carter; that the clerk who made the order for the defendants had no authority, without such approval, to make the contract for the firm; and that in violation of the express understanding between the clerk and the salesman at the time the contract was delivered, the latter immediately notified his house of the order; and the erasure of the words in the contract, above indicated, confirms the state--

ment made by the clerk, and not denied by the salesman, that the order was not to be delivered until approved by Mr. Carter. There was, therefore, no complete contract between the parties until it had been approved as stipulated; and the act of the salesman in sending the order without such approval was in violation of the agreement. The contract, therefore, not having been completed, its delivery by the salesman to his firm was not binding upon the defendants. We think the case, under these facts, is fully controlled by the decision of the Supreme Court in *Hansford* v. *Freeman, 99 Ga.* 376 (27 S. E. 706). In that case a promissory note was signed and delivered by the maker to the payee's agent upon an express understanding and agreement that the latter was not to deliver the note to his principal, unless the maker of the note could procure a loan to pay for the land for which the note was given; and the agent agreed to hold the note until this fact was definitely determined. The proposed purchaser of the land, the maker of the note, failed to procure the loan, but the agent, in violation of the understanding and agreement, delivered the note to his principal. Under these circumstances the Supreme Court held, that such delivery was not effective or binding upon the maker, and that the agent was, as to the matter of delivery, the mutual agent of both the parties.　　　　　*Judgment affirmed.*