22679.  SOUTH GEORGIA TRUST COMPANY *v.* CRANDALL *et al.*

SUTTON, J.  1. Certain grounds of the motion for a new trial complain of the introduction of evidence as to the official character and position of various officers of the plaintiff trust company and as to who constituted its executive committee. The plaintiff was a corporation, and before notice on its part of the alleged defects in the note sued on could be shown by the defendants, it was necessary for them to show that the managing officer or officers of the corporation had knowledge or notice thereof. This was a material and vital issue. As a general rule, the highest and best evidence of who the officers or board of directors of a corporation are is to be found in the minutes of the corporation; and before parol evidence thereof can be introduced, over timely and proper objection, the minutes must be produced or accounted for, or some proper foundation laid for the introduction of secondary evidence, where the identity of the officers or board of directors of the corporation is a material and vital fact to be proved in the case. *Camp* v. *State,* 31 *Ga. App.* 737 (122 S. E. 249); *Kaylor* v. *Carrollton Bank,* 37 *Ga. App.* 664 (141 S. E. 422); *Bank of Garfield* v. *Clark,* 138 *Ga.* 798 (7) (76 S. E. 95); *Caudell* v. *Athens Savings Bank,* 140 *Ga.* 713 (79 S. E. 776). Under the principles laid down in these cases, we think that the court

erred in admitting the testimony complained of in these grounds of the motion for new trial.

2. The court did not err in permitting an officer of the plaintiff trust company to testify that some officer of the plaintiff made up the file which contained two duplicate unsigned agreements for a deed relative to the real-estate transaction between the original payee of the note and the defendants. This witness properly testified that some officer of the bank made up the file, and that he was not sure whether or not he made it, but that generally the secretary of the plaintiff would make the files up.

3. It was not error for the court to admit the testimony of an officer of the plaintiff that at the time the original payee sold the note to the plaintiff he stated that it was for the purchase-money of real estate; and that he (the witness) was not sure whether the payee said an agreement for a deed or a bond for title had been given. This evidence was material, and, under the other evidence in the case, could have been considered by the jury in determining whether or not this officer of the plaintiff was put on sufficient notice to cause him to inquire into the transaction, and whether or not such an inquiry would have led to a discovery of the alleged defects in the note sued on, before the plaintiff purchased it.

4. It was not error for the court to permit one of the defendants to testify that the note sued on was to be held by the original payee until the trade between them should become completed; that these negotiations looking to the transfer of the stock and conveyance of the lots and payment of the notes were still in progress towards the end of the year 1926, when the large note was split up into two notes, one of which was the note sued on in this case; and that these two notes were delivered to the original payee with the same understanding that the large note was. This evidence did not tend to vary or contradict the terms of the memorandum of agreement between the original payee and the defendants, which was in evidence. On the contrary, the evidence and the memorandum of agreement all tended to establish and show the alleged claims of the defendants as to the whole transaction. The evidence objected to did not tend to vary or contradict the terms of the note sued on. A written document may by parol evidence or other extrinsic evidence be shown not to be a contract at all because of the nonperformance of a condition precedent as to which the writing is silent. *Heitmann* v. *Commercial Bank of Savannah*, 6 *Ga. App.* 584 (65 S. E. 590); *Bank of Tallapoosa* v. *Patterson*, 38 *Ga. App.* 644 (145 S. E. 97).

5. The court permitted one of the defendants to testify, over objection of the plaintiff, that when the original payee of the note and the defendants were negotiating about the lots in question, they had an agreement with the original payee that the note would be paid only when the original payee had resold the lots for the defendants, and only out of the proceeds of such resale. The note sued on set forth how and when it was to be paid. The court erred in admitting this evidence. It tended to vary and contradict the terms of the written instrument sued on. It tended to change the time and manner of payment of the note as set forth by the terms of the written instrument itself.

6. It was not error to permit witnesses for the defendants to testify that they went to the office of the plaintiff trust company and consulted with its vice-president as to the note sued on, that they saw an unsigned agreement for a deed as to the lots in the file produced by this officer, and that this agreement was signed by the original payee, but was not signed by the defendants, the defendants having given the plaintiff a notice to produce such unsigned agreement, and the plaintiff having failed to do so and introduced the evidence of its present secretary that such unsigned agreement was not now in the files of the plaintiff and had not been there since he had held his present office.

7. The plaintiff having introduced in evidence a memorandum of agreement between the original payee and the defendants, dated August 10, 1926, to the effect that the defendants owned certain stock in a peanut products company, which stock, together with a note for $2,670, was to be exchanged for ten of the unsold lots in a named subdivision, the lots to be selected by one of the defendants, and that receipt of the note was thereby acknowledged, the stock to be delivered or satisfactory bond given as early as possible, at which time the payee would convey to the defendants the lots referred to, it was not error for the court to permit the defendants to introduce in evidence a memorandum of agreement between the same parties dated July 14, 1926, which recited that in consideration of the lots in such subdivision, to be selected by the defendants from those then unsold, they agreed to sell and transfer to the payee all their right and title in the stock in such peanut products company, on demand of the payee, that he was to make title to the lots, free and clear of all encumbrances, and that the trade was conditioned only upon the payee making further investigation into the affairs of the peanut company. These contracts tended to explain the transaction between Shemwell, the original payee, and the defendants, and were not contradictory, but both should be construed together in determining the entire transaction.

8. It was not error for the former vice-president of the plaintiff to testify that while he held this position he had a conversation with the original payee, that at the time the plaintiff bought the note sued on, the statement was made to its executive committee that the note was for the purchase-money of real estate, and that it was the understanding of this witness that the trade for the stock of the peanut products company was represented to "us" by the payee as being abandoned. From this evidence the jury could reasonably infer that the executive committee of the plaintiff knew of the trade for the stock in the peanut company.

9. The court charged the jury that "in a civil case it is not necessary to prove the defense, in order to carry the burden to a reasonable and moral certainty and beyond a reasonable doubt, where property rights are involved, but you weigh the evidence and decide where the preponderance of evidence, is, although you might have some doubt as to what is the truth." This charge was inapt, and, as the case goes back for another trial, will not likely recur.

10. It was not error to charge the jury the essentials of the defense pleaded and relied on by the defendants and to instruct the jury that if the defense were true, the defendants would have a complete defense against the original payee were he suing them on the note.

11. The court erred in charging the jury that if the original payee agreed at the time the note was made that it was to be paid only out of a resale of the lots, that when the lots were resold the original payee was to get payment of the note out of the proceeds of the resale, and that if this was true, the original payee would not have any right to sue on the note. To permit the defendants to show that the note was only to be paid when the lots were resold and only out of the proceeds of the resale, and to rely on this as a defense to the suit on the note, would be to change the time and manner of payment specified in the written note itself and would vary its terms.

12. The court did not err in charging the jury that the "defendants contend that the trust company was put on notice of certain facts in connection with this transaction that would charge them with legal notice, with knowledge of such matters that would have put them on inquiry that would have brought them to the truth of the defense in this case; that is what the defendants contend. Was the trust company put on such notice? You have the evidence before you." This instruction stated substantially the law prevailing in this State as to notice, as shown by section 56 of the negotiable-instruments law. Michie's Code (1926), § 4294(56).

13. Under the facts of this case the court did not err in charging the jury that "notice to a corporation may be given by notice to an officer of that corporation. If Parker (the vice-president of plaintiff at the time it purchased the note) was an officer of the plaintiff and he acquired notice of facts in connection with this transaction that would have put him on inquiry as to whether or not this was a completed transaction, or whether or not the notes were given without consideration, if he was put on notice by certain facts brought to his knowledge, and he was an officer of the corporation, that would be notice to the corporation of such knowledge as he acquired." Notice can only be acquired by or given to a corporation by and through its proper officers and agents. See *Bank of St. Marys* v. *Mumford*, 6 *Ga.* 44; *Veasey* v. *Graham*, 17 *Ga.* 99 (3) (63 Am. D. 228); *Scofield &c. Co.* v. *State*, 54 *Ga.* 635, 640; *Oconee County Bank* v. *Marshall*, 159 *Ga.* 515, 519 (126 S. E. 369); *Exchange Bank of Savannah* v. *Pate*, 41 *Ga. App.* 1, 3 (151 S. E. 823), and cit.

14. The court did not err in charging the jury that they should "look to what notice he (the above-mentioned officer) had or did acquire. Did he acquire any knowledge of any facts connected with this transaction that would have given him reasonable ground to believe that there was something about the note that would render it invalid, that it represented an incomplete contract as to conveyance of land and the land never had been conveyed, and the right to Shemwell (the original payee) to the note had not ripened. If he was put on such notice, if he knew of any facts prior to the discount of the note by the trust company, if it discounted it, if he knew of any such information, as I have stated, that would be notice to the trust .company of such infirmities in the note, and if it was put on notice of any of these. matters that would defeat Shemwell, then the result would be that would defeat the plaintiff." This instruction stated in the main a correct and applicable principle,

**332**

15. The court charged the jury that "If the trust company, or if by such inquiry as to facts that actually came to its knowledge, had led to the conclusion the note was without consideration, or the consideration had failed, or with the knowledge that the note was given to be paid out of a resale of the land, if the trust company acquired the note under those circumstances, then they are not entitled to recover." This charge was partially erroneous. If the court had left out the clause "or with the knowledge that the note was given to be paid out of a resale of the land," the instruction would have been a correct and applicable one.

16. The court erred in charging the jury that "Notice to an officer of a bank would be imputed to the bank where such officer was acting to his own interest as opposed to that of the bank. I charge you that in reference to notice to Mr. Shemwell." This was an erroneous statement as to the law, and would alone require the grant of a new trial.

17. The court did not err in excluding from evidence a deed from the plaintiff to the defendants to certain lots in the subdivision involved in this case, the deed being dated September 2, 1930, some time after the institution of the suit on the note in this case, and having never been tendered to the defendants until when it was offered in evidence on the trial of the suit on the note, the transaction between Shemwell and the defendants being that one of the defendants should select the lots, and it not being shown that such defendant had selected the lots described in this deed. This was a change of the position of the plaintiff in the case during its progress, and the suit was brought and the defense filed on facts existing at the time of its filing.

18. By reason of the errors above set forth, the court erred in overruling the motion for new trial.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*

DECIDED JULY 27, 1933. REHEARING DENIED AUGUST 12, 1933.

334

*Bennet & Peacock, L. A. Peacock, Norman E. English,* for plaintiff.

*Mathews & Mathews, T. S. Felder, Brock, Sparks & Russell, Harris, Popper & Weaver,* for defendants.